UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------x

LANE CRAWFORD LLC, :

Plaintiff, :

12 Civ. 9190 (GBD) (AJP)

-against- :

**REPORT AND RECOMMENDATION**

KELEX TRADING (CA) INC., KA WAI CHOI, HAVE FASHION, INC., KENNETH KHANG and DOES 1-10, :

Defendants. :

--------------------------------------x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable George B. Daniels, United States District Judge:**

Plaintiff Lane Crawford LLC brought this action against defendants alleging, inter alia, trademark infringement. (Dkt. No. 1: Compl.; Dkt. No. 8: Am. Compl.) On September 4, 2013, Judge Daniels granted Lane Crawford a default judgment against defendants Kelex Trading (CA) Inc. and Ka Wai Choi, and referred the matter to me for an inquest on damages, including attorneys' fees. (Dkt. No. 14: 9/4/13 Order; Dkt. No. 18: 10/31/13 Referral Order.)[1] For the reasons set forth below, the Court should award Lane Crawford $1,011,119.50.

## BACKGROUND

### Procedural History

Lane Crawford initiated this action against Kelex and Choi on December 18, 2012. (Dkt. No. 1: Compl.) Kelex and Choi answered, through counsel, on January 28, 2013. (Dkt. No.

---

[1] While the Order granted Lane Crawford a default judgment against all defendants (see 9/4/13 Order), Lane Crawford seeks only to enforce the judgment against the "intended defaulting defendants," Kelex and Choi. (Dkt. No. 16: Dweck Aff. ¶ 5 n.1; see also page 2 below.)

5: Ans.) On February 1, 2013, Lane Crawford filed an amended complaint adding defendants Have Fashion, Inc. and Kenneth Khang. (Dkt. No. 8: Am. Compl.)[2] On July 17, 2013, Judge Daniels granted Kelex and Choi's counsel's request to withdraw, and held:

> Because a "corporation is not allowed to appear in federal court except by a licensed attorney," corporate Defendant Kelex Trading (CA) Inc. may be subject to a default judgment if it does not retain counsel in the next 30 days. The answer of Individual Defendant Ka Wai Choi may be struck and he may be subject to default as well unless he obtains counsel or begins to actively represent himself in this litigation.

(Dkt. No. 11: 7/17/13 Order, citation omitted.)

On August 26, 2013, Lane Crawford reported that Kelex and Choi had "not filed notices to appear nor ha[d] otherwise participated in the defense of this action," and requested that Judge Daniels enter a default. (Dkt. No. 12: 8/26/13 Letter.) On September 4, 2013, Judge Daniels granted a default judgment against Kelex and Choi for their failure "to retain counsel or otherwise appear to defend this action after this Court granted Defendants' former attorneys' motion to withdraw as counsel of record." (Dkt. No. 14: 9/4/13 Order.)

**Inquest**

Judge Daniels referred this matter to me for an inquest. (Dkt. No. 14: 9/4/13 Order; see Dkt. No. 18: 10/31/13 Referral Order.) I ordered Lane Crawford and defendants to submit inquest papers by October 25 and November 8, 2013, respectively. (Dkt. No. 15: 10/4/13 Order.) Lane Crawford timely submitted its papers; defendants have not submitted anything in opposition. (See Dkt. No. 16: Dweck Aff.; Dkt. No. 17: Lane Crawford Br.)

---

[2] It does not appear from the Court's Docket that Have Fashion and Khang ever were served. The Court therefore should dismiss the claims against those defendants without prejudice pursuant to Fed. R. Civ. P. 4(m).

In support of its request for $2,013,020 in statutory damages, costs and attorneys' fees, Lane Crawford submitted a brief and affidavit, totaling ten pages combined, and one-and-a-half pages of attorney billing records. (See Dweck Aff. ¶¶ 18, 20 & Ex. 3: Billing Records; Lane Crawford Br. at 4-5.) Lane Crawford seeks statutory damages in the maximum amount of $2 million under 15 U.S.C. § 1117(c)(2), as well as $350 in costs and $12,670 in attorneys' fees under 15 U.S.C. § 1117(a)-(b). (Dweck Aff. ¶¶ 16, 18, 20; Lane Crawford Br. at 4-5.) Additionally, without argument or authority, Lane Crawford requests equitable relief, including that defendants "be permanently enjoined from any future sales or distribution of counterfeit products or products bearing unauthorized reproductions of the Lane Crawford Trademarks." (Dweck Aff. ¶¶ 19, 21 & Ex. 4: Proposed Order ¶¶ 2(a)-(f); Lane Crawford Br. at 5.)

**The Amended Complaint**[3/]

Lane Crawford manufactures and sells clothing, including its lines of Therapy and Kiss Therapy pants. (Dkt. No. 8: Am. Compl. ¶¶ 15-16.) Lane Crawford owns the registered trademarks for the Therapy and Kiss Therapy lines, which have been in use in commerce since 2005 and 2009, respectively. (Am. Compl. ¶ 16.) Choi formed Kelex, a California corporation doing business in New York, in approximately January 2011. (Am. Compl. ¶¶ 7, 17.) Kelex advertises and sells apparel bearing counterfeits of Lane Crawford's trademarks. (Am. Compl. ¶¶ 19-20.)

Lane Crawford sent a cease and desist letter to Kelex upon discovering the infringing conduct. (Am. Compl. ¶ 22.) When Kelex failed to respond, Lane Crawford purchased samples of

---

3/ Where, as here, "'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.) (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 3d § 2688 at 58-59 (3d ed. 1998)).

Kelex's products, which included denim pants bearing counterfeits of Lane Crawford's Therapy and Kiss Therapy trademarks. (Am. Compl. ¶¶ 23-24, 45.)

The amended complaint alleges that Choi and Kelex "willfully and maliciously engaged in their counterfeiting and infringing activities" (Am. Compl. ¶¶ 38-40), and that their conduct confused and deceived consumers (Am. Compl. ¶¶ 26, 29-31, 34, 48, 61, 63, 85). Lane Crawford asserts claims for trademark counterfeiting, 15 U.S.C. § 1114 (Am. Compl. ¶¶ 46-50), trademark infringement, 15 U.S.C. § 1125(a) (Am. Compl. ¶¶ 51-66), and state law claims (Am. Compl. ¶¶ 67-90).

## ANALYSIS[4]

## I. STATUTORY DAMAGES

Pursuant to 15 U.S.C. § 1117(c)(2), Lane Crawford seeks $2 million in statutory trademark damages—the maximum amount allowed per counterfeit mark. (Dkt. No. 16: Dweck Aff. ¶ 18; Dkt. No. 17: Lane Crawford Br. at 4.)

Section 1117(c) provides:

> (c) Statutory damages for use of counterfeit marks
>
> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--

---

[4] The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'" Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c)(1)-(2).[5/]

The rationale for § 1117(c) is the practical inability to determine profits or sales made by counterfeiters. See, e.g., Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 110 (2d Cir. 2012) ("In passing the Act, which allows trademark plaintiffs to elect to recover statutory damages in counterfeit cases in lieu of actual damages, Congress apparently sought to ensure that plaintiffs would receive more than de minimis compensation for the injury caused by counterfeiting as a result of the unprovability of actual damages despite the plain inference of damages to the plaintiff from the defendant's unlawful behavior."); Bus. Trends Analysts, Inc. v. Freedonia Grp., Inc., 887 F.2d 399, 406 (2d Cir. 1989) ("[W]here 'proof of damages or discovery of profits' is 'difficult or impossible,' Congress provided for statutory damages, an automatic measure of recovery to plaintiffs regardless of injury or profits."); Warner Bros. Inc. v. Dae Rim Trading, Inc., 877 F.2d 1120, 1126 (2d Cir. 1989) ("Statutory damages are awarded when no actual damages are proven or they are

---

5/ Case law supports that defendants used counterfeits of Lane Crawford's registered trademarks. See, e.g., Yahoo! Inc. v. XYZ Cos., 872 F. Supp. 2d 300, 304 (S.D.N.Y. 2011); All-Star Mktg. Grp., LLC v. Media Brands Co., 775 F. Supp. 2d 613, 620 n.3 (S.D.N.Y. 2011) (Berman, D.J. & Peck, M.J.); Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp., 689 F. Supp. 2d 585, 597 (S.D.N.Y. 2010) (products bearing plaintiff's mark but containing deviations in production quality were counterfeit products); Motorola, Inc. v. Abeckaser, No. 07-CV-3963, 2009 WL 962809 at *5-7 (E.D.N.Y. Apr. 8, 2009) (defendant's products and packaging were counterfeit because they contained materials, words and images that were inferior and inconsistent to the plaintiff's original product and packaging); Cartier v. Aaron Faber Inc., 512 F. Supp. 2d 165, 169 (S.D.N.Y. 2007) ("A product is deemed counterfeit if it contains an original mark that is likely to deceive the public as to its origin.").

difficult to calculate."); Union of Orthodox Jewish Congregations of Am. v. Am. Food & Beverage Inc., 704 F. Supp. 2d 288, 290 (S.D.N.Y. 2010) ("Subsection 1117(c) provides trademark holders an alternative remedy to actual damages because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept[,] . . . making proving actual damages in these cases extremely difficult if not impossible.'" (quoting S. Rep. No. 104-177, at 10 (1995))); Louis Vuitton Malletier, S.A. v. LY USA, 06 Civ. 13463, 2008 WL 5637161 at *1 (S.D.N.Y. Oct. 3, 2008) ("In enacting the statutory damages provision of the Lanham Act, Congress found, generally, that 'counterfeiters' records are nonexistent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in, making proving actual damages in these cases extremely difficult if not impossible.'"), aff'd, 676 F.3d 83 (2d Cir. 2012); Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc., 03 Civ. 2132, 2006 WL 728407 at *6 (S.D.N.Y. Mar. 21, 2006) (Daniels, D.J. & Fox, M.J.) ("In crafting the statutory damages provision of the Lanham Act noted above, Congress took into account that oftentimes, 'counterfeiters' records are nonexistent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in, making proving actual damages in these cases extremely difficult if not impossible.'").[6/]

---

[6/] See also, e.g., All-Star Mktg. Grp., LLC v. Media Brands Co., 775 F. Supp. 2d at 620; Burberry Ltd. v. Euro Moda, Inc., 08 Civ. 5781, 2009 WL 4432678 at *2 (S.D.N.Y. Dec. 4, 2009) (Peck, M.J.); Nike, Inc. v. Top Brand Co., 00 Civ. 8179, 2006 WL 2946472 at *2 (S.D.N.Y. Feb. 27, 2006), report & rec. adopted, 2006 WL 2884437 (S.D.N.Y. Oct. 6, 2006); Rodgers v. Anderson, 04 Civ. 1149, 2005 WL 950021 at *2 (S.D.N.Y. Apr. 26, 2005) (Peck, M.J.); Silhouette Int'l Schmied AG v. Chakhbazian, 04 Civ. 3613, 2004 WL 2211660 at *2 (S.D.N.Y. Oct. 4, 2004) (Peck, M.J.); Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 520 (S.D.N.Y.) ("Congress added the statutory damages provision of the Lanham Act in 1995 because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept . . . , making proving actual damages in these cases extremely difficult if not impossible.'" (quoting S. Rep. No. 104-177, at 10 (1995))), amended in part, 328 F. Supp. 2d 439 (S.D.N.Y. 2004); Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003); Polo Ralph Lauren, L.P. v. 3M Trading Co., 97 Civ. 4824, 1999 WL
(continued...)

Defendants have defaulted (see page 2 above) and by virtue of their default are deemed to be willful infringers. E.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 12 Civ. 5456, 2013 WL 174226 at *3 (S.D.N.Y. Jan. 17, 2013) (Peck, M.J.), report & rec. adopted, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013); CJ Prods. LLC v. Your Store Online LLC, 11 Civ. 9513, 2012 WL 2856068 at *3 (S.D.N.Y. July 12, 2012) (Peck, M.J.), report & rec. adopted, 2012 WL 4714820 (S.D.N.Y. Oct. 3, 2012) (Daniels, D.J.); Coach, Inc. v. O'Brien, 10 Civ. 6071, 2012 WL 1255276 at *14 (S.D.N.Y. Apr. 13, 2012); All-Star Mktg. Grp., LLC v. Media Brands Co., 775 F. Supp. 2d at 621.[7/]

Accordingly, an award of statutory damages under § 1117(c)(2) is appropriate.

Besides setting the cap at $2 million per mark per type of good, and directing that courts award damages that are "just," § 1117(c)(2) does not provide guidance for determining the appropriate award in a case involving willful trademark violations. Louis Vuitton Malletier v. Carducci Leather Fashions, Inc., 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009).[8/] Thus, "courts often

---

6/ (...continued)
33740332 at *4 (S.D.N.Y. Apr. 19, 1999) ("It is often the case that 'counterfeiters' records are nonexistent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in, making proving actual damages in these cases extremely difficult if not impossible.'"); Sara Lee Corp. v. Bags of N.Y., Inc., 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999) ("Statutory damages are most appropriate when infringer nondisclosure during fact finding leaves damages uncertain.").

7/ See also, e.g., Harris v. Fairweather, 11 Civ. 2152, 2012 WL 3956801 at *3 (S.D.N.Y. Sept. 10, 2012) (Peck, M.J.), report & rec. adopted, 2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012); AW Indus., Inc. v. Sleep Well Mattress, Inc., No. 07-CV-3969, 2009 WL 485186 at *4 (E.D.N.Y. Feb. 26, 2009); Rodgers v. Anderson, 2005 WL 950021 at *3; Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d at 124.

8/ Accord, e.g., All-Star Mktg. Grp., LLC v. Media Brands Co., 775 F. Supp. 2d at 622; Union of Orthodox Jewish Congregations of Am. v. Am. Food & Beverage Inc., 704 F. Supp. 2d at 291; Louis Vuitton Malletier, S.A. v. LY USA, 2008 WL 5637161 at *1; Gucci Am., Inc.
(continued...)

have looked for guidance to the better developed case law under the Copyright Act, 17 U.S.C. § 504(c), which permits an award of statutory damages for willful copyright infringement." Louis Vuitton Malletier v. Carducci Leather Fashions, Inc., 648 F. Supp. 2d at 504 (citing cases).[9/] "As those cases indicate, where, as here, a defendant is shown to have acted willfully, a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others." Louis Vuitton Malletier v. Carducci Leather Fashions, Inc., 648 F. Supp. 2d at 504.[10/]

Courts determining damages pursuant to § 1117(c)(2) have considered the following factors:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether

---

[8/] (...continued) v. MyReplicaHandbag.com, 07 Civ. 2438, 2008 WL 512789 at *2 (S.D.N.Y. Feb. 26, 2008).

[9/] Accord, e.g., All-Star Mktg. Grp., LLC v. Media Brands Co., 775 F. Supp. 2d at 622; Union of Orthodox Jewish Congregations of Am. v. Am. Food & Beverage Inc., 704 F. Supp. 2d at 291; Louis Vuitton Malletier, S.A. v. LY USA, 2008 WL 5637161 at *1; Gucci Am., Inc. v. MyReplicaHandbag.com, 2008 WL 512789 at *2; Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc., 2006 WL 728407 at *6; Rodgers v. Anderson, 2005 WL 950021 at *2; Silhouette Int'l Schmied AG v. Chakhbazian, 2004 WL 2211660 at *2 & n.1; Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d at 520; Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d at 124-25; Polo Ralph Lauren, L.P. v. 3M Trading Co., 1999 WL 33740332 at *5; Sara Lee Corp. v. Bags of N.Y., Inc., 36 F. Supp. 2d at 166-67; 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:95 (4th ed. 2013) ("The body of case law developed to interpret the similar statutory damages provision in copyright law should prove helpful in applying the [§ 1117(c)] counterfeit statutory damages option." (fn. omitted)).

[10/] Accord, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 2013 WL 174226 at *3 & n.6; CJ Prods. LLC v. Your Store Online LLC, 2012 WL 2856068 at *3; Hounddog Prods., L.L.C. v. Empire Film Grp., Inc., 826 F. Supp. 2d 619, 631 (S.D.N.Y. 2011); All-Star Mktg. Grp., LLC v. Media Brands Co., 775 F. Supp. 2d at 622; Gucci Am., Inc. v. MyReplicaHandbag.com, 2008 WL 512789 at *3.

> a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc., 2006 WL 728407 at *6; accord, e.g., Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir.), cert. denied, 131 S. Ct. 656 (2010); N.A.S. Imp., Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992); Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1117 (2d Cir. 1986) (applying factors to willful copyright infringement).[11/]

Here, the key factors weigh in Lane Crawford's favor. The first two factors are neutral, since there is nothing in the record about the revenue defendants earned selling counterfeit merchandise or whether Lane Crawford lost any revenue from defendants' infringement. As to the third factor, the record includes no specific information indicating the monetary value of Lane Crawford's brands, except that they are "high quality products" and are widely advertised and promoted (Dkt. No. 8: Am. Compl. ¶ 33), and "we infer from the well-known reputations of most or all of the trademarks and the sea of advertising that presses them on the consciousness of the buying public that they are indeed valuable." Polo Ralph Lauren v. 3M Trading Co., 1999 WL 33740332 at *6; accord, e.g., All-Star Mktg. Grp., LLC v. Media Brands Co., 775 F. Supp. 2d at 623. As to the fourth factor, "the goal of deterring similar conduct by other enterprises requires a

---

11/ See also, e.g., Coach, Inc. v. O'Brien, 2012 WL 1255276 at *2; All-Star Mktg. Grp., LLC v. Media Brands Co., 775 F. Supp. 2d at 622; Union of Orthodox Jewish Congregations of Am. v. Am. Food & Beverage Inc., 704 F. Supp. 2d at 291; Burberry Ltd. v. Euro Moda, Inc., 2009 WL 4432678 at *4-5; Louis Vuitton Malletier, S.A. v. LY USA, 2008 WL 5637161 at *1-2; Gucci Am., Inc. v. MyReplicaHandbag.com, 2008 WL 512789 at *2-3; Hermes Int'l v. Kiernan, No. CV 06-3605, 2008 WL 4163208 at *4 (E.D.N.Y. Aug. 28, 2008); Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d at 520; Polo Ralph Lauren, L.P. v. 3M Trading Co., 1999 WL 33740332 at *5; Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d at 125.

substantial award." Louis Vuitton Malletier, S.A. v. LY USA, 2008 WL 5637161 at *2; accord, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 2013 WL 174226 at *3; Coach, Inc. v. O'Brien, 2012 WL 1255276 at *14 ("Although nothing in the record demonstrates whether [plaintiff] lost any revenue from [defendant's] infringement, the goal of deterring similar conduct generally requires a significant award."); All-Star Mktg. Grp., LLC v. Media Brands Co., 775 F. Supp. 2d at 623; Rolex Watch U.S.A., Inc. v. Jones, 99 Civ. 2359, 2002 WL 596354 at *5 (S.D.N.Y. Apr. 17, 2002). As to the fifth factor, this Court has already found that defendants' conduct was willful. (See page 7 above.) As to the sixth factor, defendants have not provided records to assess the value of the infringing material. As to the seventh factor, the amended complaint alleges that defendants continued to sell infringing merchandise even after receiving Lane Crawford's cease and desist letter. (Am. Compl. ¶¶ 22-24, 45.)

Based particularly on the fourth, fifth and seventh factors, I find that a significant award is necessary, but for the reasons discussed below, I find that an award of $1 million—half of the requested $2 million statutory maximum—is sufficient and appropriate in this case.

On the current record, it is not clear how many of Lane Crawford's marks were counterfeited on how many types of goods, i.e., whether the denim pants bearing the counterfeit marks were the only "type" of good, and whether the "Kiss Therapy" tags infringed on one or both of the Therapy and Kiss Therapy marks.[12] Thus, one large lump sum, rather than an award comprised of a lesser per-mark/type amount for multiple marks or types of goods, is appropriate. See, e.g., GMA Accessories, Inc. v. Solnicki, 07 Civ. 3219, 2011 WL 4790615 at *1 (S.D.N.Y. May

[12] Compare Am. Compl. ¶ 16 (describing Therapy and Kiss Therapy as two different registered trademarks used for "lines of apparel and outerwear"); with Am. Compl. ¶ 45 (showing pants with tags bearing the words Kiss Therapy); and Lane Crawford Br. at 4 ("defendants have willfully infringed at least one of Lane Crawford's marks on one type of good, jeans").

23, 2011) ("For willful violations, a court may award damages of up to $2,000,000 per mark, per type of good. The Court has broad discretion to determine the amount of damages, and the text of section 1117(c) does not provide precise guidance as to calculating statutory damages. This discretion has led to varying approaches by judges of this District. As summarized by Magistrate Judge Eaton in a Report and Recommendation adopted by Judge Koeltl: 'In determining statutory damages, one judge has awarded the maximum amount of $1,000,000 per mark per type of merchandise. Some judges have awarded $1,000,000 but with no multiplication for multiple marks. However, most judges have issued awards well below the maximums available on the basis of per-mark-per-type-of-goods.'" (citations omitted & quoting Gucci Am., Inc. v. MyReplicaHandbag.com, 2008 WL 512789 at *5 & nn.1-3 (collecting cases))); Louis Vuitton Malletier v. WhenU.Com, Inc., 05 Civ. 1325, 2007 WL 257717 at *6 & n.2 (S.D.N.Y. Jan. 26, 2007) ("[M]ost cases either (a) awarded the [then-]statutory maximum of $1,000,000 without multiplication or (b) issued per-mark awards well below the individual maximums." (collecting cases)); Louis Vuitton Malletier v. Veit, 211 F. Supp. 2d 567, 584 (E.D. Pa. 2002) ("[C]ourts have been inclined to either award the maximum without multiplication or to lower the per mark award.").

Lane Crawford simply has not provided the Court with any information that would justify a maximum award of $2 million. While defendants certainly should not benefit from their failure to provide information about their profits or otherwise participate in this action, neither should Lane Crawford reap a windfall in the absence of any information about the potential amount of Lane Crawford's lost revenues or the scale of its operation in comparison to the market. See, e.g., Coach, Inc. v. O'Brien, 2012 WL 1255276 at *3-4 (awarding damages "far below what [plaintiff] has requested" and "below the maximum allowable under the statute," noting that while a "willful infringer should not be able to unilaterally limit a damages award by" failing to provide information

about "the fruits of her infringement," neither should a plaintiff be able to "reap a windfall multi-million dollar award from the actions of a single small-scale infringer"); Pitbull Prods., Inc. v. Universal Netmedia, Inc., 07 Civ. 1784, 2007 WL 3287368 at *3-4 (S.D.N.Y. Nov. 7, 2007) ("[T]he defendants' failure to respond to the papers seeking a default judgment has left the Court with no information as to any of the factors relating to the defendants' circumstances. Thus, the Court draws every inference on these points against the defendants. Nonetheless, [plaintiff] has not provided any rationale for awarding the [then-]maximum of $1,000,000 per mark. In the cases cited by plaintiff awarding the maximum, the record included documentation addressing the volume or potential value of infringing goods. Here there is no record whatsoever regarding the nature of the defendants' infringement, estimates of the defendants' earnings, or possible losses to [plaintiff] arising from the defendants' conduct." (citations omitted)); Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc., 2006 WL 728407 at *6 ("The plaintiff contends that these aims [of specific and general deterrence] will best be achieved by an award to it of statutory damages that approaches the [then-]maximum amount permitted by 15 U.S.C. § 1117(c), $1,000,000 per mark infringed. However, [plaintiff] has not provided the Court with any information about [defendant's] business, the market in which [defendant] sold or is continuing to sell the counterfeit products, or any estimate of the volume of products bearing the plaintiff's marks sold by the defendant. Without information of this type, the Court cannot conclude that an award of statutory damages at or near the maximum permitted by law is reasonable, appropriate and just.").[13/]

---

[13/] Compare, e.g., Polo Ralph Lauren, L.P. v. 3M Trading Co., 1999 WL 33740332 at *7 (maximum award not warranted in light of "gaps in the record that plaintiffs might have filled, at least to some degree, despite defendants' default, and the fact that defendants themselves apparently own only one small storefront"); with Yahoo! Inc. v. XYZ Cos., 872 F. Supp. 2d at 308 (maximum award warranted where "the scale of Defendants' infringement (continued...)

Based particularly upon defendants' willfulness, the lack of any information about profits or lost revenue, and the statutory goals of specific and general deterrence, I find that an award of $1 million is appropriate in this case and within the range of recent awards in comparable cases. See, e.g., Tiffany (NJ) LLC v. Dong, 11 Civ. 2183, 2013 WL 4046380 at *6-7 (S.D.N.Y. Aug. 9, 2013) ("[T]he Seller Defendants' failure to appear or respond to [plaintiff's] papers seeking a default judgment has left the Court with relatively little information on which to base a damages award. Among other things, it is impossible to determine the precise scope of the Seller Defendants' counterfeiting operations, or the amount of the expenses they saved and profit that they reaped by infringing the [plaintiff's] Marks. . . . In these circumstances, [plaintiff] is entitled to a substantial damages award, both to compensate [plaintiff] for the damage to the [plaintiff's] Marks and to further the goals of specific and general deterrence. . . . I recommend that [plaintiff] be awarded statutory damages in the amount of $1 million . . . ."); Coach, Inc. v. McMeins, 11 Civ. 3574, 2012 WL 1071269 at *4 (S.D.N.Y. Mar. 9, 2012) (despite that "there is nothing in the record about the revenue earned by the defendant's sale of counterfeit merchandise, or any actual proof that the plaintiff lost revenue from the defendant's infringement," $800,000 "is an appropriate award as it effectively serves the compensatory, punitive, and deterrent purposes of 15 U.S.C. § 1117(c)"), report & rec. adopted, 2012 WL 1080487 (S.D.N.Y. Mar. 30, 2012); Rolex Watch, U.S.A., Inc. v. Pharel, No. 09 CV 4810, 2011 WL 1131401 at *6 (E.D.N.Y. Mar. 11, 2011) ("In light of the absence

---

13/     (...continued)
        activities appears significant, as Defendants sent 11,660,790 emails over a period of less than
        three years"); GMA Accessories, Inc. v. Solnicki, 2011 WL 4790615 at *2 ("Where the
        evidence indicates that defendants reaped significant profits for its infringing activities, a
        high statutory damages award may be justified."); and Nike, Inc. v. Top Brand Co., 2006
        WL 2946472 at *2-3 ("the size of the defendants' infringing operations, which led to the
        production of millions of infringing goods produced," justified maximum award).

of proof of a substantial or highly profitable counterfeiting enterprise, and in light of awards in similar cases . . . , I recommend granting Plaintiff a total of $1,000,000 in statutory damages."), report & rec. adopted, 2011 WL 1130457 (E.D.N.Y. Mar. 28, 2011); Burberry Ltd. v. Euro Moda, Inc., 2009 WL 4432678 at *6 ("Based [] upon defendants' willfulness and the lack of information about defendants' profits or [plaintiff's] lost revenue, I believe that an award of $1 million . . . is appropriate."); Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc., 06 Civ. 7827, 2008 WL 4449533 at *6 (S.D.N.Y. Oct. 2, 2008) ("[T]aking into account the defendant's failure to submit to this Court any documentation from which to determine damages, the willfulness of its conduct, and the deterrent effect of a damages award, $1,000,000 is sufficient to compensate [plaintiff] for losses it suffered and to deter the defendant and others from infringing on the marks in the future."); Rolex Watch U.S.A., Inc. v. Brown, 01 Civ. 9155, 2002 WL 1226863 at *2 (S.D.N.Y. June 5, 2002) (Peck, M.J.) ("[T]he $1 million [then-]maximum statutory damage amount, without multiplication for multiple [counterfeit] marks, is sufficient to serve as a deterrent to [defendant] (and infringers like him) and to compensate [plaintiff]. . . . There is no evidence in the record as to the scope of [defendant's] business, but the Court believes the $1 million damage amount is appropriate and sufficient."); Spice Entm't, Inc. v. Spice Entm't, Ltd., 01 Civ. 9705, 2002 WL 34696250 at *1, *3 (S.D.N.Y. Mar. 27, 2002) (where "Defendants have failed to answer Plaintiff's complaint or otherwise appear in this matter" and plaintiff "filed a motion for entry of a default judgment against the Defendants, seeking $2,000,000 in statutory damages," court awarded "statutory damages in the amount of one million dollars ($1,000,000.00), pursuant to 15 U.S.C. § 1117(c)").[14/]

---

[14/] See also, e.g., Rolex Watch U.S.A., Inc. v. replicastoreonline.webs.com, 11 Civ. 1488, 2013 WL 5345904 at *6 (S.D.N.Y. Sept. 24, 2013) (where plaintiff requested $20 million for ten marks, court awarded total of $1.5 million against defaulting defendants); Johnson & (continued...)

Accordingly, the Court should award Lane Crawford a total of $1 million in statutory trademark damages under 15 U.S.C. § 1117(c)(2).

## II. ATTORNEYS' FEES AND COSTS

### A. Legal Standards Governing Attorneys' Fees in Trademark Infringement Cases

Because Lane Crawford elected to recover statutory damages under subsection (c) of § 1117 (see Part I above), which does not itself contain a provision for an award of attorneys' fees, Lane Crawford seeks its attorneys' fees under subsections (a) and (b). (Dkt. No. 17: Lane Crawford Br. at 4-5.)[15/] The Second Circuit has held that when damages are awarded pursuant to subsection

---

14/ (...continued) Johnson v. Azam Int'l Trading, No. 07-cv-4302, 2013 WL 4048295 at *15 (E.D.N.Y. Aug. 9, 2013) (awarding $1 million per mark against willful infringers); Rolex Watch U.S.A., Inc. v. City Styles 313, LLC, 12 Civ. 4754, 2012 WL 5992102 at *4 (S.D.N.Y. Nov. 29, 2012) ("Given the willful nature of this conduct and the need for deterrence, the Court concludes that an award of statutory damages of $200,000 per mark is appropriate, amounting to a total award of $1,000,000."); Coach, Inc. v. Allen, 11 Civ. 3590, 2012 WL 5359579 at *3 (S.D.N.Y. July 20, 2012) ("[T]here is no question that the Defendants violated [plaintiff's] trademark rights with respect to numerous types of goods even if the specific goods infringed have not been identified. . . . I therefore recommend that [plaintiff] be awarded statutory damages against [defendant] in the amount of $2,200,000, consisting of $200,000 . . . for each of eleven types of goods. While the amount is only half what [plaintiff] has requested, it nevertheless is a substantial award that is likely to have the punitive and deterrent effect that [plaintiff] seeks."); Louis Vuitton Malletier, S.A. v. LY USA, 2008 WL 5637161 at *3 ("These seven factors justify a substantial award of statutory damages. I believe that half of the maximum amount . . . is appropriate . . . ."); Pitbull Prods., Inc. v. Universal Netmedia, Inc., 2007 WL 3287368 at *4 (award of half the maximum amount "is sufficient to compensate [plaintiff] for losses it suffered and to deter both the defendants and others from infringing on those marks in the future"); Louis Vuitton Malletier v. Veit, 211 F. Supp. 2d at 585 ("I conclude that a total award of $1,000,000 . . . ensures the dual objectives of compensating Plaintiffs and deterring Defendants.").

15/ Subsection (a) provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Under subsection (b), in cases of willful infringement, "the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee." 15 U.S.C. § 1117(b).

(c), attorneys' fees are recoverable under the "exceptional cases" provision of subsection (a), but not under subsection (b)'s mandatory provision. Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 109 & n.25, 111 (2d Cir. 2012) ("The attorney's fee provisions of sections 1117(a) and (b) differ in an important respect: the former is subject to the 'exceptional case' requirement, and is therefore discretionary, while the latter is mandatory. . . . [A]n award of attorney's fees is available under section 1117(a) in 'exceptional' cases even for those plaintiffs who opt to receive statutory damages under section 1117(c).").[16]

The Court may award attorneys' fees to the prevailing party in "exceptional" cases under 15 U.S.C. § 1117(a). The allegations in the complaint of willful infringement, along with defendants' default, are sufficient to justify the award of attorneys' fees to plaintiff Lane Crawford. See, e.g., 15 U.S.C. § 1117(a); Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d at 111; Harris v. Fairweather, 11 Civ. 2152, 2012 WL 3956801 at *6 (S.D.N.Y. Sept. 10, 2012) (Peck,

---

[16] Accord, e.g., Union of Orthodox Jewish Congregations of Am. v. Queseria Fiesta, LLC, 12 Civ. 6059, 2013 WL 1386965 at *2 (S.D.N.Y. Apr. 5, 2013) ("The fact that a party is awarded statutory damages under § 1117(c) does not preclude an award of attorney's fees under § 1117(a)."); 4 Louis Altman & Malla Pollack, Callmann on Unfair Competition, Trademarks and Monopolies § 23:67 (4th ed. 2013) ("In 2012, [the Second] circuit carefully analyzed the language and purpose of the statutory language, concluding that automatic attorney's fees pursuant to § 35(b) were unavailable when statutory damages were elected; however, attorney's fees were available in tandem with statutory damages when the attorney's fees were based on exceptionality under § 35(a)." (fn. omitted)); 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:95 (4th ed. 2013) ("[T]he Second Circuit held that, if in a counterfeit case, the trademark owner opts for statutory damages under Lanham Act § 35(c), then it can also receive discretionary attorney fees under Lanham Act § 35(a), 15 U.S.C.A. § 1117(a), which are provided for 'exceptional cases.'"); Malla Pollack, Corporate Counsel's Guide to Trademark Law § 11:8 (2013); 1 Robert L. Rossi, Attorneys' Fees § 10:44 (3d ed. 2013) ("In a trademark infringement case in which the successful plaintiff opted to receive statutory damages pursuant to 15 U.S.C.A. § 1117(c) instead of actual damages under section 1117(a), the [Second Circuit] held that an award of attorneys' fees is available under section 1117(a) in 'exceptional' cases even for those plaintiffs who opt to receive statutory damages.").

M.J.), report & rec. adopted, 2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012); Yahoo! Inc. v. XYZ Cos., 872 F. Supp. 2d 300, 309 (S.D.N.Y. 2011) (finding plaintiff entitled to reasonable attorneys' fees because the defaulted defendants acted willfully); U.S.A. Famous Original Ray's Licensing Corp. v. Tisi's Pizza & Pasta Inc., 09 Civ. 5517, 2009 WL 4351962 at *5 (S.D.N.Y. Dec. 1, 2009) (Peck, M.J.), report & rec. adopted, 2009 WL 5178023 (S.D.N.Y. Dec. 31, 2009); Chloe v. Zarafshan, 06 Civ. 3140, 2009 WL 2956827 at *7 (S.D.N.Y. Sept. 15, 2009) ("Deliberate and willful infringement can render a case 'exceptional' and thus support an award of attorney's fees.").[17/]

---

[17/] See also, e.g., U.S.A. Famous Original Ray's Licensing Corp. v. Famous Ray's Pizza Buffet Inc., 12 Civ. 8753, 2013 WL 5363777 at *6 (S.D.N.Y. Sept. 26, 2013) ("Case law in this circuit establishes that deliberate and willful infringement, as occurred in this case, is sufficient to deem a case 'exceptional' for the purposes of the statute."), report & rec. adopted, 2013 WL 5664058 (S.D.N.Y. Oct. 17, 2013); Rolex Watch U.S.A., Inc. v. City Styles 313, LLC, 12 Civ. 4754, 2012 WL 5992102 at *4 (S.D.N.Y. Nov. 29, 2012) ("Under the Lanham Act, 'the court in exceptional cases may award reasonable attorney fees to the prevailing party.' Exceptional circumstances include willful infringement, and thus a 'finding of willfulness determines the right to attorneys' fees.' Because the Court has concluded that Defendants['] conduct was willful, an award of fees and costs is appropriate." (citations omitted)); GAKM Res. LLC v. Jaylyn Sales Inc., 08 Civ. 6030, 2009 WL 2150891 at *7 (S.D.N.Y. July 20, 2009) (Lynch, D.J. & Katz, M.J.) ("Because Defendants willfully infringed Plaintiffs' trademarks, Plaintiffs are entitled to reasonable attorneys' fees."); AW Indus., Inc. v. Sleep Well Mattress, Inc., No. 07-CV-3969, 2009 WL 485186 at *4 (E.D.N.Y. Feb. 26, 2009) ("The allegations in the instant complaint, along with [defendant]'s default, are sufficient to justify an award of attorneys' fees in this case."); Guardian Life Ins. Co. of Am. v. Does 1-10, 05 Civ. 6606, 2006 WL 3008078 at *2 (S.D.N.Y. Oct. 23, 2006) (Peck, M.J.), report & rec. adopted, 2007 WL 103022 (S.D.N.Y. Jan. 11, 2007); Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc., 03 Civ. 2132, 2006 WL 728407 at *7 (S.D.N.Y. Mar. 21, 2006) (Daniels, D.J. & Fox, M.J.) ("[T]he defendant's [trademark] infringement has been deemed willful by virtue of its default in this action. Therefore, the Court finds that an award to [plaintiff] of reasonable attorneys' fees [under 15 U.S.C. § 1117(a)] is warranted."); Phat Fashions LLC v. Blue Max Corp., 01 Civ. 3933, 2005 WL 1221838 at *2 (S.D.N.Y. May 2, 2005) (Defendant "has failed to present any evidence [on the inquest] to contradict the assertions in the complaint [of deliberate and willful infringement], and it has used marks with similarities to plaintiff's mark. . . . I find that its willful conduct justifies an award of attorney's fees.").

**B. Calculating Reasonable Attorneys' Fees**

Traditionally, "[i]n determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (citing Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983)).[18] Particularly in awarding statutory attorneys' fees, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward. . . ." Hensley v. Eckerhart, 461 U.S. at 434, 103 S. Ct. at 1940; see also, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 186 (2d Cir. 2008) ("[T]he lodestar method involved two steps: (1) the lodestar calculation; and (2) adjustment of the lodestar based on case-specific considerations.").

Lane Crawford provided the Court with contemporaneous time records that specify the date, the time expended, and a (vague) description of the service provided. (Dkt. No. 16: Dweck Aff. Ex. 3: Billing Records.) Lane Crawford also provided an attorney affidavit stating the billing attorney's hourly rate and credentials. (Dweck Aff. ¶ 20.)

**1. Hourly Rates**

Lane Crawford is represented by Jeffrey S. Dweck of The Law Firm of Jeffrey S. Dweck, P.C. in Manhattan. (Dkt. No. 16: Dweck Aff. ¶¶ 1, 20.) Mr. Dweck has been litigating "in the fields of intellectual property rights and infringement" since approximately 1997 and bills at an hourly rate of $350. (Dweck Aff. ¶ 20.) This rate is reasonable and commensurate with (if not

---

[18] The Second Circuit requires contemporaneous time records as a prerequisite for awarding attorneys' fees. E.g., N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).

lower than) rates that attorneys in Manhattan with comparable experience charge and that Southern and Eastern District judges have approved in other intellectual property cases. See, e.g., U.S.A. Famous Original Ray's Licensing Corp. v. Famous Ray's Pizza Buffet Inc., 12 Civ. 8753, 2013 WL 5363777 at *7-8 (S.D.N.Y. Sept. 26, 2013) (awarding $425 and $315 hourly rates for intellectual property partners with twenty-one and twelve years of experience, respectively), report & rec. adopted, 2013 WL 5664058 (S.D.N.Y. Oct. 17, 2013); Dweck v. Amadi, 10 Civ. 2577, 2012 WL 3020029 at *4 & n.5 (S.D.N.Y. July 6, 2012) (collecting cases approving $180 to $440 hourly rates for intellectual property associates), report & rec. adopted, 2012 WL 3024185 (S.D.N.Y. July 24, 2012); TigerCandy Arts, Inc. v. Blairson Corp., 09 Civ. 6215, 2012 WL 760168 at *9 (S.D.N.Y. Feb. 23, 2012) ($500, not the $800 requested, was reasonable hourly rate for partner who "has been practicing law for twenty-eight years, specializes in intellectual property law, and has been recognized as a skilled intellectual property attorney by several organizations"), report & rec. adopted, 2012 WL 1948816 (S.D.N.Y. May 30, 2012) (Daniels, D.J.); Pyatt v. Raymond, 10 Civ. 8764, 2012 WL 1668248 at *6 (S.D.N.Y. May 10, 2012) (collecting cases approving $400 to $650 hourly rates for partners in copyright and trademark cases); OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc., 09 Civ. 8665, 2010 WL 5538552 at *3 (S.D.N.Y. Dec. 6, 2010) (finding $657 per hour "is well within the range of rates for law firm partners in the New York City area with significant intellectual property law experience" and approving $395 to $435 associate rates), report & rec. adopted, 2011 WL 43459 (S.D.N.Y. Jan. 5, 2011); U.S.A. Famous Original Ray's Licensing Corp. v. Tisi's Pizza & Pasta Inc., 09 Civ. 5517, 2009 WL 4351962 at *7 (S.D.N.Y. Dec. 1, 2009) (Peck, M.J.) (hourly rates of $400 for partner and $295 for ninth year associate "are commensurate with (if not lower than) the rates that attorneys in Manhattan with comparable experience charge and

the rates that Southern and Eastern District judges have approved in other intellectual property cases"), report & rec. adopted, 2009 WL 5178023 (S.D.N.Y. Dec. 31, 2009).[19]

**2. Time Expended**

In determining whether the amount of hours billed is reasonable "the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40 (1983)). "In so doing, 'the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" Bliven v. Hunt, 579 F.3d at 213. "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney

---

[19] See also, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 12 Civ. 5456, 2013 WL 174226 at *6 (S.D.N.Y. Jan. 17, 2013) (Peck, M.J.) (hourly rates of $475 to $530 were reasonable for partners with 25 years of intellectual property experience), report & rec. adopted, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013); Truong v. N.Y. Hotel & Motel Trades Council, AFL-CIO, 07 Civ. 11383, 2011 WL 147689 at *3 (S.D.N.Y. Jan. 12, 2011) ($500 per hour is reasonable and "far less than that often billed by law firm partners"); Tu v. TAD Sys. Tech. Inc., No. 08-CV-3822, 2009 WL 2905780 at *10 (E.D.N.Y. Sept. 10, 2009) (in copyright and trademark case, court approved $375 per hour for partners, $250 per hour for senior associates, and $150 per hour for junior associates); GAKM Res. LLC v. Jaylyn Sales Inc., 08 Civ. 6030, 2009 WL 2150891 at *7-8 (S.D.N.Y. July 20, 2009) (Lynch, D.J. & Katz, M.J.) (in trademark infringement case, approving $600 to $650 hourly rate for intellectual property attorneys at a national law firm with 20 to 30 years of experience, and $525 hourly rate for an attorney at a national law firm with 11 years of experience); Margel v. E.G.L. Gem Lab Ltd., 04 Civ. 1514, 2009 WL 302069 at *8 (S.D.N.Y. Feb. 6, 2009) (Partner's "hourly rates of $550.00 in 2005 and $585.00 in 2006, though high, are reasonable in light of his fifteen to sixteen years' experience and the fact that he practices intellectual property law at a large Manhattan law firm."); Microsoft Corp. v. Computer Care Ctr., Inc., No. 06-CV-1429, 2008 WL 4179653 at *14-15 (E.D.N.Y. Sept. 10, 2008) ($500 hourly rate for a partner who had specialized in intellectual property litigation since 1994 and $385 hourly rate for an associate, "while on the high side, [fell] within the range awarded in New York City" for intellectual property cases); Entral Grp. Int'l, LLC v. Sun Sports Bar Inc., No. 05-CV-4836, 2007 WL 2891419 at *10 (E.D.N.Y. Sept. 28, 2007) (approving hourly rate of $560 for a partner and $340 to $360 for associates in copyright infringement action).

would have engaged in similar time expenditures.'" Cesario v. BNI Constr., Inc., 07 Civ. 8545, 2008 WL 5210209 at *7 (S.D.N.Y. Dec. 15, 2008) (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992), cert. denied, 506 U.S. 1053, 113 S. Ct. 978 (1993)), report & rec. adopted, 2009 WL 424136 (S.D.N.Y. Feb. 19, 2009); see also, e.g., Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012) ("In assessing the reasonableness of attorney's fees, a court looks to the amount of time spent as reflected in contemporaneous time records, and then decides how much of that time was 'reasonably expended.' If the district court finds that some of the time was not reasonably necessary to the outcome of the litigation, it should reduce the time for which compensation is awarded accordingly." (citation omitted)).

The submitted billing summary shows Lane Crawford's counsel expended 30.2 hours through October 7, 2013, and Mr. Dweck "estimate[s] the present [inquest] submission and follow up correspondence or appearances has taken and will take approximately six (6) [additional] hours," for a total of 36.2 hours. (Dkt. No. 16: Dweck Aff. ¶ 20 & Ex. 3: Billing Records.) The Court finds that Lane Crawford's request must be reduced, for several reasons. First, Lane Crawford cannot recover for time spent by attorneys completing administrative tasks. See, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 12 Civ. 5456, 2013 WL 174226 at *7 (S.D.N.Y. Jan. 17, 2013) (Peck, M.J.), report & rec. adopted, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013); Short v. Manhattan Apartments, Inc., 286 F.R.D. 248, 255 (S.D.N.Y. 2012); Ryan v. Allied Interstate, Inc., 882 F. Supp. 2d 628, 636 (S.D.N.Y. 2012) (Peck, M.J.); E.S. v. Katonah-Lewisboro Sch. Dist., 796 F. Supp. 2d 421, 431-32 (S.D.N.Y. 2011) ("A court may make [across-the-board percentage] reductions when attorneys engage in less skilled work, like filing and other administrative tasks [such as] . . . faxing and mailing documents, making copies, filing, scanning, preparing documents for electronic filing,

electronic file management, binding documents, and Bates stamping."), aff'd, 487 F. App'x 619 (2d Cir. 2012).[20]

Second, case law also makes clear that the Court may reduce the fees requested for billing entries that are vague and do not sufficiently demonstrate what counsel did. See, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 2013 WL 174226 at *8, *10 & n.19; VFS Fin., Inc. v. Pioneer Aviation, LLC, 08 Civ. 7655, 2009 WL 2447751 at *5 (S.D.N.Y. Aug. 11, 2009) (Peck, M.J.) ("Having reviewed [plaintiff's] attorneys' time sheets, the Court believes that a number of [plaintiff's] attorneys' billing entries are overly vague or duplicative, and that a percentage fee reduction therefore is appropriate."); J.S. Nicol, Inc. v. Peking Handicraft, Inc., 03 Civ. 1548, 2008 WL 4613752 at *4 (S.D.N.Y. Oct. 17, 2008) (Peck, M.J.) ("A time entry is vague if it lacks sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed. Where billing records are vague, a [percentage] reduction in fees is . . . appropriate." (quotations omitted)).[21]

---

[20] See also, e.g., All-Star Mktg. Grp., LLC v. Media Brands Co., 775 F. Supp. 2d 613, 629 (S.D.N.Y. 2011) (Berman, D.J. & Peck, M.J.) (reducing fees where entries "reflect work done at an attorney rate that could and should have been done by a paralegal or secretary"); Nat'l Audubon Soc'y, Inc. v. Sonopia Corp., 09 Civ. 0975, 2010 WL 3911261 at *5 (S.D.N.Y. Sept. 1, 2010) ("[A]dditional set-offs are necessary to account for the time spent on such less-skilled work [such as] . . . completion of the civil cover sheet, review of ECF procedures, and meeting with court clerks to discuss order to show cause and default judgment procedures."), report & rec. adopted, 2010 WL 5373900 (S.D.N.Y. Dec. 22, 2010); Tucker v. City of N.Y., 704 F. Supp. 2d 347, 356 (S.D.N.Y. 2010).

[21] See also, e.g., Short v. Manhattan Apartments, Inc., 286 F.R.D. at 255 ("A court may reduce requested fees if the attorneys' documentation of their hours is vague . . . ."); Ryan v. Allied Interstate, Inc., 882 F. Supp. 2d at 636; Carrasco v. W. Vill. Ritz Corp., 11 Civ. 7843, 2012 WL 2814112 at *7 (S.D.N.Y. July 11, 2012) (Peck, M.J.) (reducing attorney's hours where "some of the billing entries are vague and the time spent excessive"), report & rec. adopted, 2012 WL 3822238 (S.D.N.Y. Sept. 4, 2012); Gordon v. Site 16/17 Dev., LLC, 11 Civ. 0427, 2011 WL 3251520 at *5 (S.D.N.Y. July 28, 2011) (Peck, M.J.) ("When time records reflect (continued...)

Third, a reduction is warranted where the hours billed are disproportionate to the quantity or quality of the attorneys' work. See, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 2013 WL 174226 at *8, *10; Harris v. Fairweather, 11 Civ. 2152, 2012 WL 3956801 at *8 (S.D.N.Y. Sept. 10, 2012) (Peck, M.J.) ("In determining the reasonableness of the requested attorneys' fees, the Court considers the quality of the work done by the attorneys. . . . In light of the mediocre attorney performance, the vague billing entries and excessive time spent on certain tasks, the Court should reduce the total attorneys' fees . . . ." (citing cases)), report & rec. adopted, 2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012); Rolex Watch, U.S.A., Inc. v. Pharel, No. 09 CV 4810, 2011 WL 1131401 at *7 (E.D.N.Y. Mar. 11, 2011) (reduction warranted where brief "did not contain particularly complicated analyses" and omitted certain arguments entirely), report & rec. adopted, 2011 WL 1130457 (E.D.N.Y. Mar. 28, 2011); Gesualdi v. Cirillo, No. 09-CV-4570, 2011 WL 666196 at *5 (E.D.N.Y. Jan. 3, 2011) (reduction warranted where "the 26.1 total hours billed on this matter do not reflect the quality of work submitted to the Court"), report & rec. adopted, 2011 WL 666197 (E.D.N.Y. Feb. 14, 2011).[22]

---

21/ (...continued)
vague and duplicative entries, and entries for attorneys performing ministerial tasks, the Court may order a reduction in attorneys' fees." (citing cases)).

22/ See also, e.g., Truong v. N.Y. Hotel & Motel Trades Council, AFL-CIO, 07 Civ. 11383, 2011 WL 147689 at *3 (S.D.N.Y. Jan. 12, 2011) ("The Court is unclear as to why this document, presumptively a standard form order, took up to 8.75 hours of an associate[']s time. Thus the Court reduces [counsel's] billables . . . ."); OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc., 09 Civ. 8665, 2010 WL 5538552 at *5 (S.D.N.Y. Dec. 6, 2010) (reduction warranted where "attorneys spent a total of 7.6 hours on the drafting of a cease-and-desist letter and related activities" and excessive time was spent drafting a "nearly identical" document that "appears to be boilerplate"), report & rec. adopted, 2011 WL 43459 (S.D.N.Y. Jan. 5, 2011); Microsoft Corp. v. Computer Care Ctr., Inc., No. 06-CV-1429, 2008 WL 4179653 at *16 (E.D.N.Y. Sept. 10, 2008) (reducing fees where attorney "spent an excessive amount of time [1.9 hours, or $950] composing a two-page letter to the Court requesting an
(continued...)

Many of the entries billed at $350 per hour reflect work that should have been billed at a lower associate or paralegal rate. (See, e.g., Dweck Aff. Ex. 3: Billing Records: 8/27/12 Entries (.4 hours to draft standard forms for service); 12/17/12 Entry (.2 hours for drafting and revising civil cover sheet); 12/18/12 Entry (.1 hours for receiving and reviewing Judge Daniels' Rules); 12/27/12, 1/2/13, 4/9/13, 7/18/13, 10/3/13 & 10/7/13 Entries (.7 hours for receiving and reviewing court orders).) This "unreasonable allocation of the litigation tasks involved" resulted in excessive billing, which justifies a reduction. Microsoft Corp. v. Computer Care Ctr., Inc., 2008 WL 4179653 at *15-16 ("[T]he litigation was handled virtually single-handedly by . . . a partner . . . [who] performed nearly all the routine daily litigation tasks in this action. Thus, [he] billed at a partner's rate for a variety of tasks that could have been performed by an associate or even clerical staff. . . . [Plaintiff's attorneys'] fees should be significantly reduced."); see, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 2013 WL 174226 at *9 (reduction warranted for entries billed at partner rates including "receiving and reviewing scheduling order," "receiving Certificate of Default," and "receiving and reviewing inquest order"); Prescia v. U.S. Life Ins. Co., 10 Civ. 2518, 2011 WL 70569 at *3 (S.D.N.Y. Jan. 6, 2011) ("[E]ntries such as . . . 'check Court website for updates' . . . could have been done by a paralegal or some other employee who does not bill at the rate $350.00 per hour.").

Likewise, Dweck requests $2,205 for 6.3 hours spent in connection with this inquest. (Dweck Aff. ¶ 20 & Ex. 3: Billing Records: 10/3/13 & 10/7/13 Entries.) Of the 6.3 hours for which compensation is requested, .2 are attributed to drafting and revising a letter to the Court "re inquest," .1 is attributed to receiving and reviewing the "Order re Inquest Papers," and the remaining six are an "estimate" of the time it took to prepare the inquest submissions. (Dweck Aff. ¶ 20 & Ex. 3:

---

22/ (...continued)
extension of the discovery deadline").

Billing Records: 10/3/13 & 10/7/13 Entries.) The inquest application consists of a five-page affidavit and a five-page brief failing to cite any authority for the amount of attorneys' fees sought or the injunctive relief requested and containing at least one obvious error. (Compare Dweck Aff. ¶ 20 (requesting $12,670 in attorneys' fees) with Dkt. No. 17: Lane Crawford Br. at 5 (requesting $12,260 in attorneys' fees).) In light of this, 6.3 "hours preparation by [one of] the highest-billed attorney[s] on the case is unreasonable, especially since the preparation was for a routine inquest involving no additional documentary submissions." Rolex Watch, U.S.A., Inc. v. Pharel, 2011 WL 1131401 at *7; accord, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 2013 WL 174226 at *10 (reduction warranted where 9.6 hours billed for "inquest application consist[ing] of two three-page affidavits and a three-page brief citing three cases and failing to address attorneys' fees or costs"); Granite Music Corp. v. Ctr. St. Smoke House, Inc., 786 F. Supp. 2d 716, 739 (W.D.N.Y. 2010) ("Nor is it clear to the court why Plaintiffs' attorney spent a total of 18.6 hours researching and preparing a two-page motion, supported by a three-page attorney affidavit . . . [on] a matter which, for attorneys with the experience of [plaintiffs' attorneys], surely was not complex.").

The vague and largely non-existent description of Dweck's work further warrants a reduction. See, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 2013 WL 174226 at *10 n.19; Harris v. Fairweather, 2012 WL 3956801 at *8 (citing cases); Days Inn Worldwide, Inc. v. Amar Hotels, Inc., 05 Civ. 10100, 2008 WL 2485407 at *10 (S.D.N.Y. June 18, 2008) (reducing fees where vague entries "do not aid the Court in understanding the nature of the work performed and whether the work involved research, review, revision, or a combination of any of those or other tasks"). Typical entries are receive/review letter, without saying who the letter was from (e.g., Dweck Aff. Ex. 3: Billing Records: 10/17/12, 1/9/13 & 4/4/13 Entries), "Telephone/Email" with

opposing counsel, without any indication of what the subject of the discussion was (e.g., Dweck Aff. Ex. 3: Billing Records: 1/9/13, 1/28/13, 4/4/13 & 4/22/13 Entries).

For all these reasons, Lane Crawford's requested $12,670 in attorneys' fees should be reduced by fifteen (15) percent, resulting in a fee award of $10,769.50. See, e.g., Adusumelli v. Steiner, 08 Civ. 6932, 2013 WL 1285260 at *7 (S.D.N.Y. Mar. 28, 2013) ("[T]he Court will reduce the . . . Plaintiffs' fee request by fifteen percent due to vague billing entries and clerical or paralegal work performed at full attorney rates."); Finkel v. Millennium Fire Servs., LLC, No. 09 CV 540, 2011 WL 866995 at *18-19 (E.D.N.Y. Feb. 16, 2011) ("Among the reasons supporting such a reduction is that . . . certain entries in the Firm's billing records are quite brief and unclear. . . . Furthermore, in addition to the problems found in the actual billing submissions, the Court notes that plaintiffs numerous other submissions are extremely sloppy and contain numerous typographical errors, mathematical errors, various inconsistencies, and largely boilerplate assertions. Accordingly, given the problems identified in the Firm's billing entries, compiled with the numerous inaccuracies and inconsistencies which required the Court to redo the majority of the calculations provided by plaintiff, the Court respectfully recommends a fifteen percent reduction in fees." (citations & fns. omitted)), report & rec. adopted, 2011 WL 1321986 (E.D.N.Y. Apr. 6, 2011); Barney v. Edison, No. 99-CV-823, 2010 WL 8497627 at *3-4 (E.D.N.Y. Jan. 29, 2010) ("First, many of the time entries are vague. . . . For example, approximately a dozen entries bill for 'Attorney Communication' or simply 'Communication.' . . . Second, certain entries suggest that time was not spent efficiently. Defendant's counsel devoted 12.5 hours in September, 2006 writing . . . two letters of two pages each . . . . Neither letter cites any case law or otherwise reflects supporting legal research. . . . In addition, two entries bill for tasks that could have been performed by a paralegal . . . . [F]or the reasons discussed above, I respectfully recommend a small across-the-board percentage reduction

in the fees sought of 15%."), report & rec. adopted, 2012 WL 911821 (E.D.N.Y. Mar. 16, 2012); Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 476 (S.D.N.Y. 2009) ("Defendants contend that the Court should reduce [the firm's] total hours billed . . . because the hours are excessive, billing entries are vague, and compensation should not be provided for time spent executing clerical tasks. The Court agrees that an across-the-board reduction in hours billed is appropriate, and concludes that a reduction of 15 percent is reasonable.").[23/]

**C. Costs**

"The Lanham Act allows prevailing parties to recover the costs of the action. See 15 U.S.C. 1117(a). Generally '[o]ut of pocket litigation costs are . . . recoverable if they are necessary for the representation of the client.'" GAKM Res. LLC v. Jaylyn Sales Inc., 08 Civ. 6030, 2009 WL 2150891 at *10 (S.D.N.Y. July 20, 2009) (Lynch, D.J. & Katz, M.J.) (quoting Tri-Star Pictures, Inc. v. Unger, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999)).

---

[23/] See also, e.g., Carter v. Wolf, No. 06CV1351, 2013 WL 1946827 at *5 (D. Conn. May 9, 2013) ("[T]he Court finds that an additional 15 percent reduction for vague and/or excessive entries is warranted."); Chen v. Cnty. of Suffolk, 927 F. Supp. 2d 58, 75 (E.D.N.Y. 2013) (reducing attorneys' fees by 15%); E.F. v. N.Y.C. Dep't of Educ., 11 Civ. 5243, 2012 WL 5462602 at *8 (S.D.N.Y. Nov. 8, 2012) (reducing attorneys' fees by 15%); Firststorm Partners 2, LLC v. Vassel, No. 10-CV-2356, 2012 WL 3536979 at *5 (E.D.N.Y. Aug. 15, 2012) (reducing attorneys' fees by 15% in light of the action's "routine nature and lack of complexity"); Rosado v. City of N.Y., 11 Civ. 4285, 2012 WL 955510 at *6 (S.D.N.Y. Mar. 15, 2012) (reducing attorneys' fees by 15% where "the total number of hours charged by plaintiff's counsel is excessive for the tasks performed to resolve this litigation"); Masino v. Alza Constr. Corp., No. 09 CV 4720, 2012 WL 911548 at *4 (E.D.N.Y. Feb. 24, 2012) ("I find a fifteen percent (15%) reduction in plaintiffs' counsel's billing sufficient to account for the duplicative and excessive work."), report & rec. adopted, 2012 WL 909936 (E.D.N.Y. Mar. 14, 2012); Spalluto v. Trump Int'l Hotel & Tower, 04 Civ. 7497, 2008 WL 4525372 at *9 (S.D.N.Y. Oct. 2, 2008) ("I recommend further reducing [the attorneys'] hours by 15% to account for the . . . vague time entries."); Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc., 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003) (reducing attorneys' fees by 15%).

Lane Crawford seeks costs of $350 for the filing fee. (Dkt. No. 16: Dweck Aff. ¶ 20.) The request is appropriate. See, e.g., U.S.A. Famous Original Ray's Licensing Corp. v. Famous Ray's Pizza Buffet Inc., 12 Civ. 8753, 2013 WL 5363777 at *8-9 (S.D.N.Y. Sept. 26, 2013), report & rec. adopted, 2013 WL 5664058 (S.D.N.Y. Oct. 17, 2013); Ryan v. Allied Interstate, Inc., 882 F. Supp. 2d 628, 638 (S.D.N.Y. 2012) (Peck, M.J.).[24]

## III. INJUNCTIVE RELIEF

Without any argument or citation to authority, Lane Crawford requests equitable relief including a permanent injunction. (See Dkt. No. 16: Dweck Aff. ¶ 19 ("In addition, the defendants should be permanently enjoined from any future sales or distribution of counterfeit products or products bearing unauthorized reproductions of the Lane Crawford Trademarks."); Dweck Aff. ¶ 21 ("Plaintiff also seeks a permanent injunction. A proposed Order is submitted herewith."); Dkt. No. 17: Lane Crawford Br. at 5 ("default judgment should be entered against the defendants . . . for a permanent injunction").) According to its attached proposal, Lane Crawford seeks an Order providing the following broadly worded equitable relief:

> Defendants KELEX TRADING (CA) INC. and KA WAI CHOI are permanently enjoined, together with all those in active concert or participation with it, from:
>
> a. imitating, copying or making unauthorized use of the "Kiss Therapy" trademark ("Lane Crawford's Trademark");
>
> b. designing, manufacturing, purchasing, importing, exporting, distributing, circulating, selling, offering for sale, advertising, promoting or displaying

---

[24] See also, e.g., CJ Prods. LLC v. Your Store Online LLC, 11 Civ. 9513, 2012 WL 2856068 at *6 (S.D.N.Y. July 12, 2012) (Peck, M.J.), report & rec. adopted, 2012 WL 4714820 (S.D.N.Y. Oct. 3, 2012) (Daniels, D.J.); Carrasco v. W. Vill. Ritz Corp., 11 Civ. 7843, 2012 WL 2814112 at *7 (S.D.N.Y. July 11, 2012) (Peck, M.J.), report & rec. adopted, 2012 WL 3822238 (S.D.N.Y. Sept. 4, 2012); TigerCandy Arts, Inc. v. Blairson Corp., 09 Civ. 6215, 2012 WL 1948816 at *4 (S.D.N.Y. May 30, 2012) (Daniels, D.J.) (properly recoverable costs included filing fee).

any product bearing any simulation, reproduction, copy, counterfeit or colorable imitation of Lane Crawford's Trademark;

c. using any simulation, reproduction, copy, counterfeit or colorable imitation of Lane Crawford's Trademark in connection with the promotion, advertisement, display, design, manufacture, purchase, sale, offering for sale, production, import, export, circulation or distribution of any product, in such manner as to relate or connect, or tend to relate or connect such product in any way with Plaintiff, or to any goods sold, sponsored, approved by, or connected with Plaintiff;

d. engaging in any other activity constituting unfair competition with Plaintiff or constituting an infringement of Plaintiff's Trademark or of Plaintiff's rights in, or its right to use or exploit, such trademarks;

e. engaging in any other activity, including the effectuation of assignments or transfers of interests in simulations, reproductions, unauthorized simulations, copies, counterfeits or colorable imitations of Lane Crawford's Trademark, including the formation of other corporations, partnerships, associations or other entities or the utilization of any other devices, for the purpose of circumventing, evading, avoiding or otherwise violating the prohibitions set forth in subsections 2(a) through 2(d) hereof; and

f. Defendants KELEX TRADING (CA) INC. and KA WAI CHOI are directed to deliver to counsel for Plaintiff for destruction all products, labels, design tape, diskettes, computer programs, prints, signs, packages, dyes, wrappers, receptacles and advertisements in their possession, custody or control bearing Lane Crawford's Trademark, and any plates, molds, matrices and other means of making such simulations of such trademark . . . .

(Dweck Aff. Ex. 4: Proposed Order ¶¶ 2(a)-(f).)

In light of Lane Crawford's failure to provide any briefing or case law to support the imposition of such broad equitable relief, this request should be denied. See, e.g., U.S.A. Famous Original Ray's Licensing Corp. v. Famous Ray's Pizza Buffet Inc., 12 Civ. 8753, 2013 WL 5363777 at *6 n.5 (S.D.N.Y. Sept. 26, 2013) (Plaintiff "has not offered any briefing or case law to support its request that [defendant] be enjoined from 'unfairly competing with [plaintiff] in any other manner whatsoever.' Accordingly, this provision should not be ordered."), report & rec. adopted, 2013 WL 5664058 (S.D.N.Y. Oct. 17, 2013); Curves Int'l, Inc. v. Negron, No. CV 11-2986, 2012 WL

4490542 at *4 (E.D.N.Y. Aug. 31, 2012) ("The Court may issue an injunction on a motion for

default judgment upon a showing by the moving party that it is entitled to injunctive relief under the

applicable statute, and that it meets the prerequisites for the issuance of an injunction. . . . Because

plaintiff has failed to make any showing as to these necessary elements, I recommend that plaintiff's

request for injunctive relief be denied."), report & rec. adopted, 2012 WL 4490553 (E.D.N.Y. Sept.

28, 2012); Billion Tower Int'l, LLC v. MDCT Corp., 08 Civ. 4185, 2010 WL 5536513 at *12

(S.D.N.Y. Dec. 10, 2010) ("Indeed, [plaintiff] cites virtually no legal authority for the proposition

that it is entitled to a permanent injunction; and the sole case that it does cite contains no discussion

of the permanent injunction standard at all.  In light of [plaintiff's] failure to provide adequate legal

authority to bolster its contention and because the factual record has not been sufficiently developed

to warrant such relief, [plaintiff] is not entitled to a permanent injunction." (citation omitted)), report

& rec. adopted, 2011 WL 43458 (S.D.N.Y. Jan. 6, 2011); ResQNet.com, Inc. v. Lansa, Inc., 533 F.

Supp. 2d 397, 420-21 (S.D.N.Y. 2008) ("A plaintiff seeking a permanent injunction must satisfy a

four-factor test before a court may grant such relief. . . . [Plaintiff] has made no showing to establish

any of the four factors for a permanent injunction.  There is no evidence that any injury to [plaintiff]

by sales of [defendant's product] is irreparable.  There is no showing that remedies at law are

insufficient or that a remedy in equity is warranted given the balance of hardships.  Accordingly,

the issuance of an injunction is not appropriate."), aff'd in relevant part, vacated in part on other

grounds, 594 F.3d 860 (Fed. Cir. 2010).[25/]

---

[25/]   See also, e.g., Harris v. Fairweather, 11 Civ. 2152, 2012 WL 3956801 at *12 (S.D.N.Y. Sept.
10, 2012) (Peck, M.J.) (permanent injunction denied where plaintiff "failed to support this
request with any legal authority"), report & rec. adopted, 2012 WL 5199250 (S.D.N.Y. Oct.
19, 2012); Gesualdi v. Interstate Masonry Corp., No. 11 CV 958, 2011 WL 7032900 at *11
(E.D.N.Y. Nov. 16, 2011) ("Although in the Complaint, plaintiffs seek to permanently enjoin
(continued...)

**CONCLUSION**

For the reasons set forth above, the Court should award Lane Crawford statutory trademark damages of $1 million, attorneys' fees of $10,769.50 and costs of $350, for a total monetary award of $1,011,119.50 against defendants Kelex Trading and Choi. The Court also should dismiss the claims against the remaining defendants for lack of service.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, 500 Pearl Street, Room 1310, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Daniels (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Ingram v. Herrick, 475 F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d

---

25/ (...continued)
defendant . . . , plaintiffs have not demonstrated the necessity of a permanent injunction. Indeed, in submitting their inquest papers, counsel appears to have abandoned the request for injunctive relief. Without allegations of more pressing need or a lack of legal alternatives, the Court cannot conclude that a permanent injunction is necessary to prevent irreparable harm and that there exists no adequate remedy at law. Accordingly, the Court respectfully recommends that plaintiffs' request for the issuance of a permanent injunction be denied."), report & rec. adopted, 2012 WL 27441 (E.D.N.Y. Jan. 4, 2012); La Barbera v. Bestech Transp., LLC, No. CV 07-4699, 2011 WL 1316153 at *6 (E.D.N.Y. Mar. 8, 2011) ("[P]laintiffs' request for a permanent injunction fails because they have not shown that monetary damages are inadequate to remedy future violations."), report & rec. adopted, 2011 WL 1253729 (E.D.N.Y. Mar. 31, 2011); Real Estate Investors Ass'n v. City of Jamestown, No. 00-CV-815, 2005 WL 602377 at *1 n.3 (W.D.N.Y. Mar. 8, 2005) (permanent injunction denied where plaintiffs failed "to cite any authority for such relief").

1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984

F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S.

1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir.

1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d

234, 237-38 (2d Cir. 1983).

Dated:      New York, New York
            December 3, 2013

Respectfully submitted,

**Andrew J. Peck**
United States Magistrate Judge

Copies to:      Jeffrey S. Dweck, Esq. (ECF)
                Kelex Trading (CA) Inc. & Ka Wai Choi via
                    Regular & Certified Mail at the following two addresses:
                        1385 Broadway, Suite 1112, New York, NY 10018
                        11221 Rush Street, Suite C, South El-Monte, CA 91733
                Judge George B. Daniels